Catron, Ch. J.
delivered the opinion of the court.
The first allegation in the bill charges David Dickinson, the administrator, with not having accounted for the interest he collected on bonds and notes after due, and before paid. Hardy Murfree died in 1809. Mr Dickinson administered in that year, but did not settle the administration accounts until 1814. This is not complained of, and under the circumstances could not be. Col. H. Murfree left a large estate, both real and personal. Mr Dickinson attended to that part of it situated in Tennessee, with the care a prudent man would to Ms own property, and acted in the character of guardian to the minor children to a great extent, as well as administrator of Col. Murfree. Mrs D. was the oldest daughter of Col. M. and an heir and distri-butee. That Mr Dickinson, in the management of the estate, acted with integrity of intention, is admitted in the bill; but it is alleged, he made manifest mistakes in settling the administration of accounts, to the prejudice of complainants, the wife being a distributee and heir of Col. M. That Mr Dickinson’s intentions were *120 honest, and his business as administrator done according to Ms best judgment and impartiality, and as he believed, to the interest of all concerned, is manifest. In 1811, before the administration, and other accounts for attending to the real estate were settled, and the property real and personal divided, complainant, Burton, intermarried with one of the younger daughters in North Carolina. In that year he came to Tennessee to see to his wife’s fortune. Mr Dickinson informed him when the settlement would take place, and insisted that he should continue in Tennessee, until after the sitting of the county court, to which the returns were to be made, and be present and aid at the settlement, so that all might be satisfied. The complainant declined waiting; expressed confidence in what the other heirs and distributees might do, and appointed Matthias B. Murfree, a younger son and brother of Mrs Burton, whose interest was that of her’s in all respects, his agent to attend to the settlement and division for him. When the county court met, the returns were made, and two gentlemen (Watson and M’Connico,) selected to divide the estate, real and personal, of Col. Murfree. They examined all the accounts, fairly and honestly submitted to them by Mr Dickinson, as administrator, and as agent or guardian, so far as he had expended money and been at trouble in taking care of the real estate, which was large and valuable. They valued the negroes, put a value on the advancements to the two elder and advanced children, Mrs Dickinson and Mrs Hilliard, settled the whole matter, and divided the property. For the balance of money, set apart to Col. Burton, Mat. B. Murfree, on his behalf and as his agent, gave Mr Dickinson a receipt, dated 24th August, 1814. The amount paid over to the agent by Mr D., the administrator, was $436 40. The negroes allotted to Mrs Burton’s share were also delivered over to the agent, and received by Col. Burton. In 1816, (having *121 received from Mr D. a copy of the accounts and division,) complainant objected to the accuracy of the account. He shortly after removed to Tennessee and resided near Mr D. and still complained. Mr D. told him all the other children were satisfied, and he had it not in his power to open the settlement; but if complainant wished to do so, to file his bill; that he, Mr D. claimed no benefit of any mistakes. Thus matters rested until July 1826, when the bill was filed. Under the circumstances, can the complainant be heard to impeach the accuracy of the settlement, because of mistakes in adjusting the administration of accounts? This court think not. There is no fraud; it is even doubtful if there were any mistakes; and were the court to open this account, it would set a precedent likely to disturb the repose of the country, and to endanger greatly the situation of the most faithful administrators. This was unquestionably a settled account within the authorities. The receipt of complainant by his agent, Mat. B. Murfree, recognized it as such, and this bill came greatly too late to call it in question, as will be seen by reference to the opinion in Clark vs. Stancil, decided at this term, and the authorities cited for defendants. 3 John. Chan. Cases, 583, &c.
The best ground on which relief is sought is, that a mistake was made in dividing the negroes. The whole were valued in 1814, when the division took place, at their worth, as well those born after Colonel Murfree’s death, as before: and those advanced to Mrs. Dickinson and Mrs. Hilliard, at what negroes of that description would be worth in 1814: deducting this from the shares of the two married daughters, or giving the unmarried children so much more, was the principle on which the division was made. It is insisted, that the negroes ought to have been valued at their worth when Colonel Mur-free died, without adding thereto the increase by births, by growth, and the value of their labor for five years, and *122 putting this together as a common fund, and dividing of it amongst all the children, advanced and unadvanced, deducting the advancements from the allotments to the elder children.
On the other hand it is insisted, that the negroes advanced in 1799 to Mrs Dickinson, and to Mrs. Hilliard in 1801, ought to have been estimated at their worth when advanced; which mistake in complainant’s favor, would produce nearly the same result that the two errors produced, were the position of complainant correct. That both positions are correct, we have little doubt; yet it does not follow that after a lapse of nearly twelve years, the division can be set aside. For at least ten years before the hill was filed, complainant was perfectly aware of the principle the division had proceeded upon, and was then told by Mr. Dickinson, what was emphatically true, that he as administrator had no power to recall the negroes from the other distributees. He had parted with the title; all the others were completely satisfied, and refused to come to a re-division, and if a hill to set that mode aside for any mistake was necessary to the end of justice, the complainant must file it.
The division of the slaves stands on the foot of an agreement amongst the parties entitled as distributees, to which the complainant was a party, acting through his agent, Mathias B. Murfree, and it lay upon him on the discovery of the mistake promptly to file his hill, and have it rectified; it is to the vigilant equity affords relief, not to those who lie by until evidence is lost, and the situation and circumstances of the parties, and the property changed hy lapse of time.
The rule is based upon the necessities of society, to illustrate the soundness of which, hardly a better case can he supposed than the. present. The administrator had divested himself of his character of trustee; parted with all the property out of which complainant ought to have been compensated; had no power to recall it; *123 -could in all probability at no time have sustained a bill to disturb the division in his character of administrator or distributee; and after the lapse of three years, could have been conclusively barred by the statute of limitations; and consequently, if liability rested upon him by reason of a mistake in the execution of his trust, the compensation must come from his own means. In such a case, equity can afford no relief. 4 Bro. C. C. 257. 2 Atk. 610. 3 Johns. C. C. 386, and Hay vs. Bogart, 2 Johnson’s Cases, 432.
As to the defendant William H. Murfree, there is no proof that he did not settle with complainant strictly as required by law, and it is proved, to the satisfaction of complainant when the settlement was made, and for years afterwards; but were these slight mistakes discoverable, it is too late for complainant to sustain the bill; which we order to be dismissed in affirmance of the decree below.
Decree affirmed.